**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JEREMY L. RAMIREZ, on behalf of himself and the classes defined below, | ) ) ) ) | 09 CV 1195 |
| Plaintiff, | ) ) | Judge Lefkow |
| vs. | ) ) | Magistrate Judge Denlow |
| GREEN TREE SERVICING LLC, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

Plaintiff Jeremy Ramirez, individually and as a representative of the Class of similarly situated persons, by Class Counsel, Edelman, Combs, Latturner & Goodwin, LLC, respectfully submits the following Memorandum in Support of Final Approval of the Class Settlement Agreement ("Agreement") which this Court preliminarily approved on November 15, 2010.

**I.      SUMMARY OF NOTICE PROVIDED TO CLASS**

The Court is advised that on or before December 14, 2010, subsequent to the entry of the preliminary approval order, notice of the settlement of this action was mailed to 1,481 individuals identified as members of the Class. (Appendix 1, Affidavit of Janet Noterman) The U.S. Post Office returned 450 of the notices as "undeliverable." There were 108 claim forms which were returned and postmarked before the January 31, 2011 deadline. Three claim forms were received after January 31, 2011. With the Court's permission, the parties agree that the additional claim

1

forms will be treated as timely. Pursuant to the terms of the settlement agreement, no class member will receive more than $1,000, the maximum amount provided for by the FDCPA §1692k. Whether the Court elects to include the additional claim forms or not, each class member will receive $1,000.

There were no requests for exclusion received from Class members and no objections were filed.

## II.    OVERVIEW OF THE LITIGATION PRECEDING SETTLEMENT.

The above captioned lawsuit was filed by Plaintiff in the United States District Court for the Northern District of Illinois, Eastern Division on behalf of himself and a class of similarly situated individuals, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA") and Illinois Collection Agency Act ("ICAA"). In the action, Plaintiff alleged that Defendant violated the FDCPA because it failed to disclose in its initial communication the name of the creditor to whom the debt is allegedly owed. Plaintiff also alleged that Defendant violated the ICAA because of its improper collection efforts or activities stemming from a purported failure by Green Tree Servicing to obtain a license under the ICAA. Defendant denies liability.

Plaintiff sought to recover statutory damages, as provided for by 15 U.S.C. §1692k, for himself and a class of individuals.

The parties were successful in reaching an agreement to settle the case on a class-wide basis. The parties' agreement was preliminarily approved by the Court on November 15, 2010. Notice was issued on or before December 14, 2010. (<u>Appendix 1</u>). Defendants served the notice required by the Class Action Fairness Act on November 15, 2010. As demonstrated below, the parties' Agreement is now ripe for this Court's consideration and final approval.

2

### III. THE ADMINISTRATION OF THIS CLASS ACTION SETTLEMENT

#### A. The Preliminary Approval Order.

On November 15, 2010, this Court entered an order granting preliminary approval of the Agreement reached between the parties. In the Preliminary Approval Order ("Order"), the Court specifically found that the proposed terms of the settlement satisfied all of the elements of Federal Rule of Civil Procedure 23(a) and 23(b)(3).

The parties stipulated to a class (the "Class") for purposes of the Agreement, defined as:

> (a) all persons in Illinois, Indiana, or Wisconsin, (b) to whom Green Tree Servicing sent initial letters in the forms represented by Exhibits A and B to Plaintiff's second amended complaint (the "Challenged Letters"), and (c) on or after a date one year prior to the filing of the lawsuit (or on or after February 25, 2008) and less than 20 days after the filing of the lawsuit (or on or before March 16, 2009).

The Order further established a procedural framework for the final approval of the settlement. The Order required the parties to cause notice to be mailed to the members of the above defined Class, set deadlines and procedures for the submission requests for exclusion and objections to the settlement, and set a fairness hearing date of March 15, 2011.

#### B. The Value of the Settlement.

The Court has previously considered the terms of the settlement in entering the Order, which are as follows:

1. Defendant agrees to create a settlement fund of $160,000 (One Hundred Sixty Thousand Dollars) ("the Settlement Fund"). From the Settlement Fund will come all payments to members of the Settlement Class, all individual and incentive awards to Ramirez, all approved attorney's fees and costs, and all third-party costs for notice or administration of this Agreement.

  2. Subject to Court approval, Defendant agrees to pay the sum of $5,000 to plaintiff from the Settlement Fund. This amount represents Plaintiff's statutory damages and incentive awards in recognition of his services as a Class representative. Plaintiff actively participated in discovery, gave deposition testimony, and engaged in settlement discussions.

  3. After deducting the amounts for Court-approved attorney's fees and costs, costs of notice and administration, and the individual and incentive awards to Ramirez, the remainder of the $160,000 Settlement Fund will create a Class Fund for members of the Settlement Class who returned properly completed claim forms. The Class Fund will be divided pro rata by Participating Class member ("a Settlement Share"). The distribution will be in the form of a check which will become void ninety (90) days from the date of issue. The date of issue will be the same date as the date the check is mailed to each participating Class member. Any checks that have not been cashed thirty (30) days after the void date will be donated to the Legal Assistance Foundation of Chicago as a *cy pres* award.

  The U.S. Post Office returned 450 notices as undeliverable. No exclusions were received. Three late claim forms were received after January 31, 2011. With the Court's permission, the parties agree that the three additional claim forms will be treated as timely. Therefore, with the Court's permission, 111 claims would be considered timely submitted, and each Class member who submitted a claim form will receive $1,000.

  3. Defendants shall pay attorney's fees and costs to Class Counsel of $40,000, subject to Court approval. This amount will be subtracted from the Settlement Fund piror to the pro rata distribution. Defendants agree not to oppose Class Counsel's application for attorney's fees and costs in this amount.

4

## IV. THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT.

The settlement satisfies all the requirements of Rule 23.

### A. Rule 23(a)(1) - The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable.

As determined through the parties' discovery, there were approximately 1,481 individuals who met the Class definition, and who were subsequently sent notice of the settlement, pursuant to the Court's orders. The United States Court of Appeals for the Seventh Circuit has recognized that as few as 40 class members are sufficient to satisfy the "numerosity" requirement of Rule 23(a)(1). *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969); *see also Newberg on Class Actions*, 3rd ed. Sec. 3.05, pp. 3-25 ("The difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."). The number of Class members in this case plainly satisfies the numerosity requirement of Rule 23(a)(1).

### B. Rule 23(a)(2) - The Claims Of The Settlement Class Arise From Common Questions Of Law And Fact.

The "commonality" requirement of Rule 23(a)(2) is usually satisfied where the class members' claims arise from a common nucleus of operative fact. *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992). Rule 23(a)(2) requires only that the class members share at least one question of fact or law in common. *Kreuzfeld A.G. v. Carnehammer*, 138 F.R.D. 594, 599 (S.D.Fla. 1991) (the issue of commonality "turns on whether there exists at least one issue affecting all or a significant number of proposed class members").

In the present case, the claims arose from the Defendant failing to disclose in its initial communication the name of the creditor to whom the debt is allegedly owed and practicing

improper collection efforts or activities stemming from a purported failure by Green Tree Servicing to obtain a license under the ICAA. This conduct gives rise to the predominant common question of whether such actions violate the FDCPA and ICAA. This common question satisfies Rule 23(a)(2).

    **C.    Rule 23(a)(3) - Named Plaintiff's Claims are Typical Of the Claims Of The Settlement Class.**

The "typicality" requirement of Rule 23(a)(3) is satisfied for many of the same reasons that the "commonality" requirement of Rule 23(a)(3) is met. *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1993)("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory"); *see also Kornberg v. Carnival Cruse Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (the typicality requirement is satisfied where the "claims or defenses of the class and the class representative arise from the same event or practice and are based upon the same legal theory").

In the present case, Plaintiff's claim arose from the same questions of law as those of Class members. Plaintiff alleged that Defendant failed to disclose in its initial communication the name of the creditor to whom the debt is allegedly owed. Plaintiff also alleged that Defendant violated the ICAA because of its improper collection efforts or activities stemming from a purported failure by Green Tree Servicing to obtain a license under the ICAA. By definition, each of the class members has been subjected to the same practice as the Plaintiff. Accordingly, the typicality requirement of Rule 23(a)(3) is met.

    **D.    Rule 23(a)(4) - Plaintiff and Class Counsel Will Fairly And Adequately Protect The Interests Of The Settlement Class.**

The determination that the "representative parties will fairly and adequately protect the interests of the class" as required by Rule 23(a)(4) involve two considerations: (1) whether the Plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (2) whether the Plaintiff has any interests antagonistic to the class. *General Tel. Co. v. Falcon*, 102 S.Ct. 2364, 2370, n.13 (1982); *Retired Chicago Policy Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

As set forth in Class Counsel's Declaration, attached hereto as Appendix 2, Plaintiff's counsel is experienced in class action and FDCPA litigation. In addition, Plaintiff Ramirez has shown through his prosecution of this matter that he has no interests which are antagonistic to the Class. He has engaged in discovery relating to class certification and to determine the value of the claims and has negotiated a fair and reasonable settlement on behalf of the Class. Therefore, Plaintiff and his counsel satisfy the adequacy of representation requirement embodied in Rule 23(a)(4).

### E. The Settlement Class May Be Certified Pursuant to Rule 23(b)(3).

Class certification is appropriate under Rule 23(b)(3) where: (1) common questions of law or fact predominate over individual questions; and where (2) a class action represents a superior method for the fair and efficient adjudication of the controversy. Both of these requirements are satisfied in the present case.

#### 1. Common questions predominate over individual issues.

In order for common questions of law or fact to predominate over individual issues for purposes of Rule 23(b)(3), common issues must constitute a significant part of the individual cases. *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). Courts "generally focus on the liability issues in deciding whether the predominance requirement is met, and if the

liability issue is common to the Class, common questions are held to predominate." *In re Alexander Grant & Co. Litigation*, 110 F.R.D. 528, 534 (S.D.Fla. 1986); *see also Dura-Built Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 89 (S.D.N.Y. 1981). In the present case, a common issue relating to the lawfulness of Defendant's collection practice directed against Plaintiff and the Class predominates over individual issues, if any, as required by Rule 23(b)(3).

### 2. A Class Action is Superior to Other Methods of Resolving This Matter.

For many of the reasons set forth above, a class action is the superior method to resolve the claims presented in this action. In determining the superiority of a class action, the Court must consider the best available method of resolving the controversy in keeping with the goal of judicial economy. In reaching this determination, the Court should consider the inability of the uninformed to bring their claims and the improbability that large numbers of Class members would possess the initiative to litigate individually. *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974). In *Phillips Petroleum Company v. Shutts*, 472 U.S. 797, 809, 105 S.Ct. 2965 (1985), the Supreme Court recognized that in cases where the class members' claims are too many or too small to litigate on an individual basis, the Court should certify the case as a class action under Rule 23(b)(3).

Given the large number of individual lawsuits that would be required if a class were not certified, a class action presents a superior method to fairly and efficiently adjudicate all of the claims of the class in this case, within the meaning of Rule 23(b)(3). To the extent that any Class members wished to pursue any such individual claim, they were free to opt-out of the settlement under Rule 23(b)(3). In the present case, no exclusions or objections were received.

**F.     The Standard For Granting Final Approval To The Class Action Settlement.**

In *Amchem Productions, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231 (1997), the United States Supreme Court explained that, before approving a class action settlement, the District Court must first be satisfied that the elements of Rule 23(a) and 23(b) have been met. *Id.* at 621, 117 S.Ct. at 2248.

Once the Court has determined that the requirements of Rule 23(a) and 23(b) have been met, the Court must then determine whether Rule 23(e) has been satisfied by determining whether the settlement is fair, reasonable, and adequate. *General Electric Capital Corporation v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997). The Court considers the following six factors in making this determination:

1. The strength of the plaintiff's case on the merits measured against the terms of the settlement;

2. The complexity, length, and expense of continued litigation;

3. The amount of opposition to the settlement among class members;

4. The presence of collusion in gaining a settlement;

5. The stage of the proceedings; and

6. The amount of discovery completed.

Id. (citing *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 308 (7th Cir. 1985)). The class action settlement in the present case satisfies each of the factors outlined in *GE Capital*.

While Plaintiff believes that he would have prevailed at trial on the merits, there are certain risks associated with further litigation. Even if Plaintiff prevailed on the issue of whether Defendant's conduct violated the FDCPA and ICAA, it is possible that Defendant would have been

9

able to prove that its violation was a bona fide error notwithstanding procedures in place to avoid such violations.

In order to avoid the uncertainty presented by any litigation, the parties agreed to settle the dispute between them. The compromise provides that each class member whose claim form was submitted in a timely fashion will receive a *pro rata* cash payment from the settlement fund established by Defendant. Based on the number of claim forms received, and assuming the Court allows for the addition of the late claim forms, the class members will receive approximately $1,000, the maximum allowable amount under the statute which is a fair and reasonable recovery. The arguable strength of the Class's claims compare favorably to the terms of the settlement, satisfying the first of the *GE Capital* factors.

In addition, the settlement is warranted by the complexity, length and expense of continued litigation, satisfying the second *GE Capital* factor. The settlement easily satisfies the third *GE Capital* factor because only no class members elected to exclude themselves from the settlement and no objections were filed or received.

As evidence of the lack of any collusion, the above-described settlement amount to Plaintiff and Class counsel compare favorably to the direct benefits to the Class, thereby satisfying the fourth *GE Capital* factor.

Finally, the fifth and sixth *GE Capital* factors also support the final approval of this settlement in light of the stage of pre-trial proceedings and the discovery completed to date. The action was brought on February 25, 2009. The parties engaged in extensive discovery, began preparing to brief a motion for class certification and a motion for summary judgment. Given the

stage of proceedings and the investigation and discovery completed, the proposed settlement satisfies the fifth and sixth *GE Capital* factors.

## V.     THE ATTORNEY'S FEES AND COSTS ARE REASONABLE

Pursuant to the Agreement, the Defendant will pay attorney's fees and costs of $40,000. Class Counsel requests approval of the Court of attorney's fees and costs of that amount. As set forth in the Declaration of Daniel A. Edelman (Appendix 2), Plaintiff's counsel includes experienced class action attorneys, all of whom contributed their skills and expended their resources in a coordinated effort that resulted in the settlement of this matter.

The actual time and expenses incurred by Edelman, Combs Latturner & Goodwin, LLC, as of March 8, 2011 in this action was $50,982.20 (fees) and $1,447.52 (costs). (*See* Exhibit F to the Declaration of Daniel A. Edelman, attached as Appendix 2). The total amount incurred is already in excess of the agreed upon maximum payment of attorney's fees and costs by Defendant, and does not include the time and expense incurred by counsel preparing for, and appearing at, the fairness hearing plus the continuing calls from Class members, inquiring about the settlement checks. Accordingly, the request for $40,000 is fair and reasonable and Class Counsel requests that the Court approve that amount.

11

## VI.     CONCLUSION

For all the reasons set forth above, Plaintiff individually, and as a representative of the Class of similarly situated persons, by Class Counsel, requests this Court grant final approval of the Agreement. Attached as <u>Appendix 3</u> is a draft Final Approval Order.

Respectfully submitted,

<u>s/ Cassandra P. Miller</u>

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Michelle R. Teggelaar
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

**CERTIFICATE OF SERVICE**

       I, Cassandra P. Miller, hereby certify that on March 7, 2011, I caused to be filed the foregoing documents via the CM/ECF System, which sent notification of such filing to the following parties via electronic mail:

Jonathan N. Ledsky
jledsky@vblhc.com

Craig A. Varga
cvarga@vblhc.com

Scott J. Helfand
shelfand@vblhc.com

Joshua D. Davidson
jdavidson@vblhc.com

                                                  s/ Cassandra P. Miller


Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Michelle R. Teggelaar
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)